IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20CR00134-1 SNLJ |
| | ) |
| TRAVIS CRANE | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Travis Crane, age 30, requests the Court find a sentence less than 20 years just punishment for his offense. The mandatory minimum punishment for Mr. Crane's offense is 15 years, and his guilty plea is based upon a binding plea agreement. Per the agreement, the parties agree Mr. Crane shall not receive a sentence above 20 years. Mr. Crane's acceptance of responsibility - the timeliness and completeness of it – differentiates him from most people accused of similar conduct. As such, though a significant punishment is warranted, a sentence below 20 years of incarceration meets the sentencing goals of 18 U.S.C. §3553 considering the circumstances surrounding the offense and Mr. Crane's history and characteristics. The following is stated in support of the requested sentence:

**A sentence below 20 years is sufficient but not greater than necessary to achieve just punishment:**

- **Complete acceptance of responsibility:**

Travis Crane did not display the predictable reactions of most offenders when a case involving the sexual exploitation of a child is uncovered and an offender identified. There are certain reactions by such offenders that are typically predictable, and it is important to note Mr.

Crane did not respond in such a manner.[1]  The predictable reactions are as follows:

**Denial:**  Usually the first reaction of an offender to discovery will be complete denial.  The offender may act shocked, surprised, or even indignant about an allegation of sexual activity with a child.  The offender may claim to know nothing about it or that he or she does not remember.  The offender might admit to an act but deny the intent was sexual gratification.  The offender may imply that his or her actions were misunderstood and a mistake has been made.  Investigators handling such cases anticipate initial denial by an offender and are careful not to be thrown off the course of the investigation.  Mr. Crane spoke openly and honestly with the investigator handling Mr. Crane's offense investigation, and the discussions were video recorded.  On several occasions and over the course of several interviews, the investigator comments to Mr. Crane how his candor and willingness to provide information was valued.  Even after being advised his punishment would be severe and knowing he had a right to remain silent, Mr. Crane did not use delay as a tactic or refuse to speak with the investigator.

**Minimization and Justification:**  If the evidence against an offender rules out total denial, the offender may attempt to minimize what he or she has done, both in quantity and quality.  The offender may blame the conduct on his or her own past trauma or other personal problems in an effort to distance himself or herself from accountability.  The offender may also not be willing to provide any additional information other than what has already been discovered.  Mr. Crane did not attempt to minimize his conduct.  Though the offense was committed during the same time period Mr. Crane was suffering depression from a failed marriage and complications related to his

---

[1]  The following information is obtained from publication the National Center for Missing & Exploited Children in cooperation with the Federal Bureau of Investigation: "Child Molesters:  A Behavioral Analysis for Law Enforcement Officers Investigating Cases of Child Sexual Exploitation." https://www.ncjrs.gov/pdffiles1/Digitization/149252NCJRS.pdf

unmanageable diabetes, he did not attempt to avoid responsibility by claiming any type of excuse related to such. Mr. Crane's disclosure allowed the investigator to correctly identify the victim in order to pursue any necessary investigatory or victim-advocacy measures.

**Attack:** It is important to not overlook this potential reaction of an identified offender. It can be used many times by an offender during an investigation or prosecution. This reaction consists of attacking or going on the offensive. The offender may harass, threaten or bribe victims or witnesses. Mr. Crane has not engaged in such behavior.

**Mental Illness:** When other tactics fail, an offender may feign mental illness. Few offenders admit mental illness issues until after they are identified, arrested or until other tactics fail. Mr. Crane has never attempted to feign any such illness as a means to escape punishment for his offense.

- **The recognition of treatment as an important component of punishment:**

Society sees offenders like Mr. Crane as irredeemable. Society believes such offenders are incapable of change, should be removed from the public sphere and made to endure lifelong punishment. There are offenders who sexually exploit children who are incorrigible. Society's opinion regarding incorrigible offenders is not misplaced. However, therapy can and does effect change in certain offenders. To foster environments where children are not abused, it is important to recognize there is proven therapy for offenders such as Mr. Crane that is designed to do just that. The maximum punishment a person can receive for Mr. Crane's offense is 30 years of incarceration. Though this maximum punishment is severe, it is not the same as life in prison. Therefore, the punishment statute for Mr. Crane's offense conduct recognizes therapy and rehabilitation can and does work in conjunction with the availability of a lifetime period of supervised release. If therapy and rehabilitation did not work for people willing to accept such, the maximum punishment designated by Congress would likely be life in prison. However, this is

not the case.

Recognizing rehabilitation can be achieved is unsettling to accept. Society often experiences aversion when asked to examine the prospect of rehabilitation for such acts, offenders and situations. For offenders who have not accepted immediate responsibility and demonstrated denial, minimizing or justification, a just sentence, per 18 U.S.C. §3553, should only have a retributive component. But for offenders who immediately accept responsibility like Mr. Crane, a just sentence should have a retributive component as well as a rehabilitative component. To say this is not to excuse the offense conduct or lessen the damage to victims of such conduct. To say Mr. Crane has the potential to recover from his wrong conduct isn't simply about recognizing his humanity. It is said in recognition of the proven therapies supported by the Bureau of Prisons (BOP) volunteer Sex Offender Management Program.[2] Mr. Crane wants to participate in the BOP's Sex Offender Management Program, and his behavior throughout the prosecution of his offense is evidence his motivation is genuine.

- **The offense conduct:**

Mr. Crane's offense conduct was the product of a relationship he developed over the internet with an unidentified woman. Mr. Crane connected with the woman on Facebook when she was designated a "recommended friend" through the social networking site. She had no connections to any other individuals Mr. Crane knew, and she did she have any connections to his

---

[2] The Federal Bureau of Prisons has established procedures and guidelines for Sex Offender and Management Services (SOMP) in the Bureau of Prisons (BOP). The BOP's treatment programs provide sexual offenders the opportunity to change behaviors thereby reducing criminality and recidivism. The treatment programs consist of specialized correctional management practices to address behavior that indicates increased risks for sexual offense upon release. Evaluation services exist to appraise risk of sexual offenses upon release and provide recommendations for effective reintegration into the community. The BOP Sex Offender Program also provides for transition services for sexual offenders releasing to the community. The program is voluntary, and an offender must volunteer to participate in the program.

local community.  Additionally, she never told Mr. Crane where she lived.  She shared adult videos and adult images with him, but never shared her name.  She never talked about her employment.  When Mr. Crane and the woman messaged each other, they would talk about their days, the weather, and things that had happened to them.  Sometimes they engaged in sexual talk, and she reported she was 25 years of age.  At some point, she began asking for pictures of Mr. Crane that were sexual in nature.  She never sent pictures of herself at first, but then eventually did.  However, Mr. Crane is now uncertain if the pictures were actual pictures of the woman or some other adult woman.  Suddenly and unexpectedly, their conversations transitioned to her requesting pictures of children.  When this occurred, the facts summarized in paragraph 15 of the presentence investigation report took place.  The woman always wanted more content to continue her correspondence, and she never revealed who she was.

Mr. Crane's situation is not unique, and what happened to him is likely happening somewhere on the internet right now.  There was no woman who was interested in a relationship with Mr. Crane.  The "woman" who contacted him through Facebook could have been a man, and the man may not have been in the United States.  Traffickers of child pornography search social media sites for people who can be manipulated to provide the content the traffickers want – child pornography that hasn't already been catalogued by the National Center for Missing and Exploited Children with info-hash identification numbers.  Child exploitation material is more difficult to detect by authorities monitoring the internet if the material hasn't already been identified and assigned an infohash number because software designed to detect child pornography is predominantly designed to detect infohash numbers.  Traffickers in child exploitation material know it is important to avoid material that has already been assigned an infohash number by authorities, and the traffickers know who to target to obtain non tagged and new material.  This is what happened in Mr. Crane's situation.

- **Forensic Psychological Evaluation**

Per the conclusion of Dr. Jeffrey Kline[3], an expert retained by counsel to evaluate Mr. Crane's risk to commit future sexual offenses, Mr. Crane is at a low risk to reoffend. Dr. Kline reviewed all the police reports in Mr. Crane's matter and performed a comprehensive and diagnostic interview of Mr. Crane. Dr. Kline concluded Mr. Crane does not have a mental illness or defect, and Dr. Kline specifically examined Mr. Crane for the presence of a pedophilic disorder – a disorder that involves recurrent, intense sexually arousing fantasies, urges or behaviors involving sexual activity with children. Dr. Kline found no evidence that supports the presence of an intense and persistent sexual interest in children regarding Mr. Crane. His offense conduct happened across a relatively brief time span. In viewing the evidence, Dr. Kline found no clear evidence Mr. Crane's behaviors were driven by an interest in children that is "preferential" and therefore consistent with pedophilic disorder. Additionally, Dr. Kline found Mr. Crane is at a very low risk for reoffending. Dr. Kline's diagnosis and risk assessment portions of his report is attached as Exhibit A. A low risk to reoffend is an important factor in determining the appropriate length of a sentence for Mr. Crane.

**Conclusion:**

---

[3] Jeffrey S. Kline, Ph.D, is a licensed psychologist in the state of Missouri and has been employed as a forensic psychologist for the past 22 years – 19 of which have been with the Missouri Department of Mental Health. Currently, Dr. Kline is a certified forensic examiner and a senior psychologist at the Missouri Department of Mental Health completing court ordered evaluations for competency, responsibility at the time of the offense, diagnosis, need for further hospitalization, conditional release, pre-sentence recommendations and sexually violent predator risk assessment. Dr. Kline examined Mr. Crane as part of his private practice and not as part of his duties as a Certified Forensic Examiner for the Missouri Department of Mental Health.

A sentence below 20 years, but not less than the mandatory 15 years required by statute, is sufficient for Mr. Crane's offense conduct. He has no criminal history and no history of drug or alcohol abuse that could inhibit his ability to participate meaningfully in rehabilitative treatment and supervision after his release from federal prison. As evidence by the sentencing letters submitted by his family members, he has always been a reliable brother and son despite his significant troubles with unmanageable diabetes. He is not at risk to reoffend, and sufficient protocols are in place should he not successfully complete required classes and rehabilitation while incarcerated. If the BOP's psychologists do not believe Mr. Crane has been rehabilitated at the end of his sentence, the U.S. Attorney General has the authority to commence civil commitment proceedings against Mr. Crane to detain him indefinitely as "sexually dangerous" per the Adam Walsh Child Protection and Safety Act (18 U.S.C. §4248).[4] Serious punishment is due in Mr. Crane's matter. However, a sentence less than 20 years is sufficient considering all §3553 factors.

Respectfully submitted,

/s/Jennifer L. Booth
Jennifer L. Booth
Assistant Federal Public Defender

---

[4] Under the Adam Walsh Act, the U.S. Attorney General has the authority to indefinitely detain a person who have been convicted of committing certain sex offenses if the Attorney General can prove to a civil jury that the offender is "sexually dangerous." The Act defines "sexually dangerous" as a person who "has engaged or attempted to engage in sexually violent conduct or child molestation who would be sexually dangerous to others. In addition, the person also must suffer from a severe mental illness that would make him or her "have serious difficult in refraining from sexually violent conduct or child molestation if released." The Attorney General need only prove sexual dangerousness by clear and convincing evidence – a much lower burden of proof than the beyond a reasonable doubt standard required to convict the offender of the original crime.

325 Broadway, 2nd Floor
Cape Girardeau, Missouri 63701
Telephone: (573) 339-0242
Fax: (573) 339-0305
E-mail: Jennifer_booth@fd.org

ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon John N. Koester, Jr., Assistant United States Attorney.

/s/Jennifer L. Booth
Jennifer L. Booth